*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1995**

David Scott Wilsey, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed July 14, 2014
Reversed
Peterson, Judge**

St. Louis County District Court
File No. 69DU-CV-13-1144

Peter J. Martin, Martin Law Firm, Minneapolis, Minnesota (for respondent)

Lori Swanson, Attorney General, Joseph M. Simmer, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Connolly, Judge; and Willis, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**PETERSON**, Judge

Appellant Commissioner of Public Safety challenges a district court order rescinding the revocation of respondent's driver's license under the implied-consent statute. We reverse.

**FACTS**

Respondent David Scott Wilsey was stopped in Duluth by Trooper Mike LeDoux just before 11:00 p.m. on February 27, 2013, for having a taillight out. LeDoux detected a strong odor of alcohol and observed that respondent had bloodshot and glossy eyes. LeDoux asked respondent if he had consumed alcohol, and respondent said that he drank two beers that evening. After respondent failed three field sobriety tests and a preliminary breath test, LeDoux arrested him for driving while under the influence of alcohol.

Respondent was read the standard implied-consent advisory, which, in part, informed him that "[r]efusal to take a test is a crime." Respondent said that he understood the advisory, he did not want to consult with an attorney, and he would take a blood test. The test showed that respondent's alcohol concentration was .09.

Appellant revoked respondent's driver's license effective April 8, 2013. Respondent petitioned for rescission of the revocation, arguing that the blood test was an involuntary search and, under *Missouri v. McNeely*, 133 S. Ct. 1552 (2013) (plurality opinion), which was decided on April 17, 2013, exigent circumstances did not exist to excuse a failure to obtain a warrant to permit the search. Appellant did not dispute that

there were no exigent circumstances that allowed a warrantless search and, instead, argued that respondent consented to the search.

The district court determined that while it was required to "consider the totality of circumstances in making a factual conclusion on whether [respondent's] consent was coerced or voluntary, one particular factor sticks out—that [respondent] was informed that if he did not submit to the testing, he would be committing a crime." The district court further determined:

> The options for [respondent] here were "consent" to a blood test or be charged with an additional crime on top of the crime the State already had probable cause to arrest you for. The court sees no world where such an option provides an actual choice.
>
> The State has a burden of showing by a preponderance of evidence that consent was freely and voluntarily given. The State has failed to meet that burden. The facts and circumstances present indicate that [respondent's] "consent" was actually acquiescence to a show of authority rather than true consent. Therefore, the court finds that [respondent] did not provide voluntary consent, and results of the test shall be suppressed.

The district court then rescinded the license revocation because it was based on the blood-test result.

Appellant filed a notice of appeal on October 21, 2013, and on October 23, 2013, the supreme court released its opinion in *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014).

3

# DECISION

The United States and Minnesota Constitutions guarantee persons the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. "This guarantee establishes the right to privacy 'as one of the unique values of our civilization,' and 'with few exceptions, stays the hands of the police unless they have a search warrant.'" *Brooks*, 838 N.W.2d at 568 (quoting *McDonald v. United States*, 335 U.S. 451, 453, 69 S. Ct. 191, 192 (1948)).

In *Brooks*, a driver who agreed to take a blood or urine test on three separate occasions after being told that refusing to take a test is a crime moved to suppress the test results because the police took the blood and urine samples without a warrant. *Id.* at 565-66. The supreme court explained:

> Taking blood and urine samples from someone constitutes a "search" under the Fourth Amendment. But police do not need a warrant if the subject of the search consents.
>
> For a search to fall under the consent exception, the State must show by a preponderance of the evidence that the defendant freely and voluntarily consented. Whether consent is voluntary is determined by examining the "totality of the circumstances." Consent to search may be implied by action, rather than words. And consent can be voluntary even if the circumstances of the encounter are uncomfortable for the person being questioned.

*Id.* at 568-69 (citations omitted). Then, citing *Bumper v. North Carolina*, 391 U.S. 543, 548-49, 88 S. Ct. 1788, 1792 (1968), the supreme court explained that "[a]n individual does not consent, however, simply by acquiescing to a claim of lawful authority." *Brooks*, 838 N.W.2d at 569.

4

Like respondent, Brooks argued

> that he did not truly have a choice of whether to submit to [blood and urine] tests because police told him that if he did not do so, he would be committing a crime, and . . . the fact that police advised him that it is a crime to refuse the chemical tests renders any consent illegally coerced.

*Id.* at 570.

The supreme court rejected this argument and explained:

> [A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test.
>
> . . . In *Bumper*, police sought to justify their search of a house based on the owner's consent, contending that she consented to the search by saying "[G]o ahead" after police told her they had a warrant. The Court held that this sort of submission to authority did not constitute consent. The Court concluded that when a police officer claims authority to search a house under a warrant, "he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion — albeit colorably lawful coercion. Where there is coercion there cannot be consent."
>
> Unlike *Bumper*, the Minnesota Legislature has given those who drive on Minnesota roads a right to refuse the chemical test. If a driver refuses the test, the police are required to honor that refusal and not perform the test. Although refusing the test comes with criminal penalties in Minnesota, the Supreme Court has made clear that while the choice to submit or refuse to take a chemical test "will not be an easy or pleasant one for a suspect to make," the criminal process "often requires suspects and defendants to make difficult choices." *Bumper* therefore does not support Brooks's argument that the State unlawfully coerced his consent.

*Id.* at 571 (alteration in original) (footnotes omitted) (citations omitted).

Unlike the homeowner in *Bumper*, who had no right to resist the search of her house, respondent had a right to refuse to submit to a blood test, and as in *Brooks*, his consent was not just acquiescence to a show of authority. Therefore, in light of *Brooks*, the district court erred in determining that respondent did not provide voluntary consent to testing because he "was informed that if he did not submit to the testing, he would be committing a crime," and we reverse the order rescinding respondent's license revocation.

**Reversed**.